## Tait v. Tait.

F. F. Kane and T. Daniel, for libellant; W. W. Leeds, for respondent.

GORDON, JR., J., May 2, 1929.—This is an action for divorce on the ground of cruel and barbarous treatment and indignities to the person, and the master has recommended that the divorce be granted. Two questions are presented for our determination by the exceptions, (1) the bona fides of the residence of the libellant, and (2) the existence of a cause of action.

The parties were married in 1912, in the State of New York, and lived together thereafter in New York and New Jersey until 1917, when the libellant had the respondent committed to an insane asylum in that state; and since that date the respondent has been confined in the asylum, suffering from dementia præcox. The libellant lived in Bloomfield, New Jersey, where he had formerly lived with his wife, from 1917 until 1926, when he claims to have moved his residence to this city because it is centrally located to his business, which is that of a salesman for an oil company of Michigan, his territory covering Ohio, Pennsylvania, Delaware, Maryland, New Jersey and New York. While he was considering the institution of divorce proceedings, and before consulting a Philadelphia attorney, the libellant was advised by attorneys of both New York and New Jersey that he could not secure a divorce in those states. At the place where he claims to have his permanent residence in this city, he rents a room for $5 a week, and he testifies that he occupies it about once every two weeks, at other times being "on the road." Six months after filing his libel in Philadelphia, he was involved in a proceeding for support in New Jersey, and in the court of that state to which he was summoned he testified under oath that he lived in Bloomfield.

On the foregoing facts, and after a careful reading of the testimony, we are forced to the conclusion that the libellant's residence in this city is not bona fide, and that the residence which he claims to have here was established for the purpose of securing a divorce. The only testimony he has presented which tends in any way to corroborate his claim of bona fides in the establishment of his residence here is that of a representative of his employer, who testified that he suggested to the libellant that he should move to Philadelphia in order to be centrally located for his business. All the other facts in the case speak convincingly of a typical residence for jurisdictional purposes only. His action in consulting attorneys of other states relative to securing a divorce in them; the fact that for years he carried on in Bloomfield the

same business that he has continued here; his testimony in the New Jersey support proceeding that his residence was in Bloomfield, which was given after he had instituted this proceeding upon the claim that he resided here—testimony which he seeks to avoid by the weak explanation that he expected to be in Bloomfield for a few days, and merely gave his temporary address there in case he should be wanted—and all the circumstances of his removal to and residence in this city, satisfy us that his residence here is not *bona fide*, and that the court is without jurisdiction to entertain the libel.

This makes it unnecessary to discuss in detail the testimony upon the merits of the case. It may be noted, however, that the evidence, in our judgment, falls short of indicating a course of conduct on the part of the wife, during the five years before she was placed in the insane asylum by the husband, which would justify a divorce on the grounds of cruelty and indignities. The compression into the few minutes required to give testimony of incidents which were extended over a long period of time in their happening always tends to give a picture of persistent conduct which is likely to be misleading. Doubtless the respondent exhibited traits of temperament, such a jealousy, suspicion and rudeness, which made life with her difficult. On the other hand, it cannot be overlooked that *dementia præcox* is a progressive mental disease, which is often evidenced by symptomatic conduct, such as is here made the basis of the charge of cruelty. It is very probable, therefore, that the wife's treatment of the husband is, in large measure, attributable to acts which were the symptoms of malady, rather than deliberately malicious and hostile. Both cruel and barbarous treatment and indignities to the person connote settled and deliberate hostility or its equivalent in wanton indifference. Acts, therefore, which ordinarily would be justification for divorce on such grounds lose their value and importance when their origin is discovered in mental disease. As was said by Gordon, J., in Hansell *v.* Hansell, 15 Pa. C. C. Reps. 514, 3 Dist. R. 724: "In the present case, however, the intent and motive of the party is a necessary ingredient of the offense. Cruel and barbarous treatment and indignities to the person, endangering life or health, must consist of wilful and malicious acts, or they would not come within the description of the terms. 'Cruel' and 'barbarous' are words implying a merciless and savage disposition, taking pleasure in suffering, and without pity; while 'indignities' involves an insulting and contemptuous purpose. The evil and malicious will must be present to constitute an act cruel or barbarous, and an insulting intent to make it an indignity. Accidental acts, no matter how injurious, would not be sufficient, for the wrongful intent would be absent. . . . While in this proceeding marriage is treated as a civil contract, yet it must be also regarded as something more—as a civil status or condition intended to be of perpetual continuance as to the parties, and a relation of moral obligation having certain public aspects. Some contingencies, therefore, may arise which, while they may be unfortunate and burdensome to one of the parties and destructive of the object of marriage, are, nevertheless, to be endured, and are not reasons for annulling the contract. They are part of the risks entering into the assumption of a lifelong relationship, cannot be made a matter of legal stipulation, and must be endured for public, social and moral reasons. Among these are physical weakness, loss of health, deformity and disease. And what is insanity but a disease? And if insanity, occurring after marriage, is not a ground of divorce, how can any of the results of insanity constitute such a cause? The insane acts are but a symptom of the disease."

It is true that there was no adjudication of insanity in this case until 1917, after the commission of the acts relied upon. In judging their nature and value as evidence of the disposition essential to constitute cruelty, however, we cannot overlook the strong probability that this wife's conduct had its origin in the unfortunate mental disease from which she was suffering in a progressive form, and which culminated in the necessity for institutional restraint in 1917. Comparatively slight as the acts are, even when viewed as the product of a sane mind, they are so linked up with the respondent's illness as to force us to conclude, if it were necessary, that a cause of divorce had not been made out by the libellant.

The first and second exceptions to the master's findings of fact, and the first and fifth exceptions to his conclusions of law, are sustained and the libel is dismissed.